## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **DELMARVA FISHERIES ASSOCIATION, INC.**<br>**110 North Cross Street**<br>**Chestertown, MD 21620**<br>**(Kent County)**<br><br>**MARYLAND CHARTER BOAT**<br>**ASSOCIATION, INC.**<br>**29 Craig Court**<br>**Conowingo, MD 21918**<br>**(Cecil County)**<br><br>**BRIAN NESSPOR**<br>**5642 Walnut Street**<br>**Rock Hall, MD 21661**<br>**(Kent County)**<br><br>**KENNETH JEFFRIES, JR.**<br>**P.O. BOX 1192**<br>**Severna Park, MD 21146**<br>**(Anne Arundel County)**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**ATLANTIC STATES MARINE FISHERIES**<br>**COMMISSION**<br>**1050 N. Highland Street, Suite 200 A-N**<br>**Arlington, VA 22201,**<br><br>**Defendant** | **Case No: _____** |

**COMPLAINT**

Plaintiff Delmarva Fisheries Association, Inc., ("DFA") is an IRS § 501(c)(6) not-for-profit fisheries trade association organized in 2016 as a representative of the fishing industry in an around the Chesapeake Bay.

Plaintiff Maryland Charter Boat Association, Inc. ("MCBA") is also an IRS § 501(c)(6) organization and is the largest professional group of charter boat captains operating "for hire" vessels utilized by recreational individuals or groups on the Maryland Chesapeake Bay.  Its mission is to promote sportfishing, sightseeing and cruising throughout the Maryland Chesapeake Bay area to include the Atlantic coastline.

Plaintiff Brian Nesspor is a self-employed commercial fisherman who has been conducting a Striped Bass fishing business on the Chesapeake Bay for over 40 years.  He resides at 5642 Walnut Street in Rock Hall, Maryland and is a member of DFA.

Plaintiff Kenneth Jeffries, Jr. is a self-employed Charter Boat Captain who has been conducting a Striped Bass fishing business on the Chesapeake Bay for over 20 years. He is a retired law enforcement officer who resides in Severna Park, Maryland and is a member of MCBA.

Plaintiffs bring this action for declaratory and injunctive relief against Defendant Atlantic States Marine Fisheries Commission ("ASMFC").  Defendant ASMFC is an Interstate Compact authorized by the U.S. Congress in 1942. Pub. L. 77-539 (May 4, 1942). Its 15 member states are (in order from north to south) Maine, New Hampshire, Massachusetts, Rhode Island, Connecticut, New York, New Jersey, Pennsylvania, Delaware, Maryland, Virginia, North Carolina, South Carolina, Georgia, and Florida.

ASMFC acknowledges that the Atlantic Striped Bass stock is not overfished, and that overfishing is not currently occurring.  Nevertheless, ASMFC has just imposed drastic limitations on the Plaintiffs' livelihood and property in the pursuit of their Striped Bass fishing businesses.

Plaintiffs specifically challenge Addendum II adopted by ASMFC on January 24, 2024, as Amendment 7 to the interstate Fishery Management Plan ("FMP") as it pertains to the sweeping reductions in commercial and recreational fishing quotas for Atlantic Striped Bass in the Chesapeake Bay and its inland tributaries. (Exhibit A)

### INTRODUCTION

1.      The Chesapeake Bay is the largest estuary in the United States. The Bay is in the Mid-Atlantic region and is primarily separated from the Atlantic Ocean by the Delmarva Peninsula.

2.      The Chesapeake Bay is the single most important economic and recreational resource for the 18 million people who live and work in this vast watershed which, in addition to producing approximately 500 million pounds of seafood each year, is the dominant attraction for appreciators of scenic beauty, restaurant and lodging tourism, recreational boating, and visitors to historical sites.

3.      Within the fishing industry, the Atlantic Stripped Bass (Morone saxatilis), oftentimes called "rockfish" or "stripers," is the most iconic and by far the largest fish species in the Chesapeake Bay.  Indeed, the Striped Bass is Maryland's official state fish (MD General Provisions Code Ann. § 7-305) and according to the Maryland Department of Natural Resource's website, is "Maryland's most important commercial and recreational fish species."

4.      In testament to the "historic commercial and recreational importance and economic benefit to the Atlantic coastal States and to the Nation," the United States Congress in 1984 adopted the Atlantic Striped Bass Conservation Act (Pub. L. 98–61 (Oct. 31, 1984)) to address the fact that "[n]o single government entity has full management authority throughout the range of the Atlantic striped bass."

5.     By this action, Congress asserted substantial control over Atlantic Striped Bass which has previously been administered (since 1942) primarily through the ASMFC Interstate Compact.

6.     As will be fully explained herein, the January 24, 2024 action of ASMFC, taken over the opposing votes of the States of Maryland and New Jersey, was: (1) devoid of any scientific or rational factual basis; (2) inconsistent with ASMFC's own Rules and Regulations; (3), and, failed to take into account the economic impact on fishery-dependent industries and other adversely affected Chesapeake Bay businesses and local communities.   More specifically pertaining to the Plaintiffs, these actions were taken: (4) in violation of their rights under the U.S. Constitution and other pertinent federal laws; and (5) likewise promulgated in violation of the Maryland Constitution, and other state statutory and common law.

7.     The consequence of these illegal, unnecessary, and improperly premised fishing curtailments will be to substantially impair the aggregate commercial fishing opportunities available to the Plaintiffs' member businesses and, with respect to "for hire" charter boats, reduce their business revenue by an estimated 50-65 percent.  Unless reversed or substantially modified, this executive action can only accelerate industry consolidation, decrease competition, lead to higher pricing for restauranters and other end users, and, most importantly, hasten the end of these multi-generational family businesses which are at the core of Chesapeake Bay fishing industry and among the most important drivers of economic activity and tourism on the Eastern Shore of the Chesapeake Bay.

8.     Most of Plaintiffs, as named or as organizational members, have worked on the waters of the Chesapeake Bay their entire adult lives as, in many instances, have their parents, grandparents, siblings and children.  These families are dependent upon the income earned in their fishing businesses for their livelihoods and economic survival.

9.      Plaintiffs now seek an order and judgment holding unlawful, enjoining, and setting aside the subject matter of this case (hereafter, the "2024 Striped Bass Addendum" or "Addendum").

10.     The intervention of this Court is necessary to preserve the *status quo* with respect to the Stripped Bass quotas because the unconstitutionally promulgated Addendum will irreparably harm Plaintiffs if allowed to go into effect, as scheduled, on May 1, 2024.

11.     Absent immediate relief on these claims, many of the Plaintiffs, who are overwhelmingly small and medium-sized family businesses, will be forced out of business as a direct consequence of this illegitimate governmental action which, through its public announcement alone, has already caused charter cancellations for the upcoming fishing season.

12.     In addition to the U.S. and State constitutional infirmities that are fatal to the 2024 Striped Bass Addendum, portions of the Addendum also violate standard regulatory requirements as set forth, for example, in the U.S. Administrative Procedure Act ("APA") (5 U.S.C. §§ 551–559) and its state equivalents (MD. State Government Code Ann. §§ 10-106 (2021)).

## PARTIES

13.     Plaintiff DFA, located in Chestertown, Maryland, is a 501(c)(6) fisheries trade association established to protect, defend, and enhance the commercial fishing industry in the Delmarva region of the United States for its members as well as future generations while maintaining healthy and sustainable stocks of fish.  As a § 501(c)(6) organization, DFA has standing as an adversely affected party to appear on behalf of its members.

14.     Plaintiff MCBA is located in Conowingo, Maryland.  Its membership consists of approximately 400 "for hire" vessels — primarily medium-sized, family-run boats — employing 1,500-1,600 operators and crew in the Bay from the Virginia line to the Delaware state line.  As a

§ 501(c)(6) organization, MCBA has standing as an adversely affected party to appear on behalf of its members.

15.     Plaintiff Brian Nesspor is a commercial fisherman residing in Rock Hall, Maryland who has been conducting a Striped Bass fishing business in the Chesapeake Bay; as such he is fully subject to the new commercial quota limitations imposed by the 2024 Striped Bass Addendum. (Exhibit B)

16.     Plaintiff Kenneth Jeffries, Jr. is a commercial fisherman residing in Severna Park, Maryland who has been conducting a "for hire" Charter Boat fishing business for Striped Bass on the Chesapeake Bay for over 20 years; as such he is fully subject to the new recreational quota limitations imposed by the 2024 Striped Bass Addendum. (Exhibit C)

17.     Defendant ASMFC is a consortium of state governmental entities headquartered in Arlington, Virginia with membership and purported voting rights also accorded to the National Oceanic and Atmospheric Administration ("NOAA") and the U.S. Fish and Wildlife Service ("USFWS") which are regulatory agencies, respectively, within the U.S. Department of Commerce (15 U.S.C. § 9442) and U.S. Department of the Interior (16 U.S.C. § 742a) in Washington, D.C.

## JURISDICTION AND VENUE

18.     This Court has subject-matter jurisdiction because this case arises under the Constitution and laws of the United States. U.S. Const. Art. III, § 2, Clause 1 (Maritime and Controversies between a State and Citizens of another State); 28 U.S.C. §§ 1331, 2201; 5 U.S.C. §§ 701–706.

19.     This Court has subject matter because this case arises under the Constitution and laws of the United States.  U.S. Const. Art. I, § 10, Clause 3 (Interstate Compacts); 28 U.S.C. §§ 1331, 2201; 5 U.S.C. §§ 701–706.

20.     This Court has subject matter because this case arises under the Constitution and laws of the United States.  U.S. Const. 14th Amendment (Due Process of Law); 28 U.S.C. §§ 1331, 2201; 5 U.S.C. §§ 701–706.

21.     This Court has subject matter because this case arises under the Constitution and laws of the United States.  U.S. Const. 5th Amendment (Taking of Property); 28 U.S.C. §§ 1331, 2201; 5 U.S.C. §§ 701–706.

22.     This Court has subject matter because this case arises under the Constitution and laws of the United States.  U.S. Const. 5th Amendment (Deprivation of Livelihood); 28 U.S.C. §§ 1331, 2201; 5 U.S.C. §§ 701–706.

23.     This Court has subject matter jurisdiction under 42 U.S.C § 1983 which provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

24.     This Court is authorized to award the requested relief under 5 U.S.C. § 706; 28 U.S.C. § 1361; and 28 U.S.C. §§ 2201–2202.

25.     Venue is proper in this District because Defendant includes numerous States and participating United States agencies, and Plaintiffs are located, in this District.  28 U.S.C. § 1391(e)(1).

### Derivation of Plaintiffs' Rights

26.     Over the last 70 years, administrative agencies at all levels of government have performed an ever-expanding variety of government functions and imposed more regulations than

could possibly have been imagined upon the enactment of the APA in 1946 and its State equivalents.

27.     The APA and comparable state laws were adopted to establish a set of procedural rules to govern this non-legislative form of governmental decision-making and, of even greater significance, to provide an effective method to preserve individual rights against the abuse of administrative power and, most importantly of all, to preserve the right to judicial review of agency actions.

28.     As an Interstate Compact, however, ASFMC has vigorously asserted that despite the fact that the U.S. Congress ratified its creation in 1942 (Pub. L. 77-539), that, as noted, representatives of federal agencies cast votes in ASMFC proceedings, that the Commission's budget is over 90 percent federally funded, and that its pronouncements are enforced by federal authorities, that it is nonetheless exempt from coverage under the APA. *State v Atlan. States Marine Fisheries,* 609 F.3d 524 (2nd Cir. 2010); *see also, United States v. Saunders*, No. 15-4498 (4th Cir. 2016).

29.     In addition to the foregoing federal imprint, the USFWS acts as the *primary research agency* for ASMFC. ASMFC Compact & Rules and Regulations, Art. VII (February 2016).

30.     As residents and thus citizens of the State of Maryland, Plaintiffs, as individuals or organizational members, have no State procedural rights that they can feasibly assert against the States where they do not reside and which, acting in concert through the ASFMC, have deprived them of their constitutional rights over the voting objection of the State where they do reside and are citizens thereof.

31.     Individual Plaintiffs and their organization's members are, however, also citizens of the United States and, as such are entitled to protection under the 14th Amendment to the U.S. Constitution which provides that:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law.

32.     Individual Plaintiffs and their organizations' members, as citizens of the United States, are also entitled, of course, to protection under the 5th Amendment to the U.S. Constitution providing that: "No person shall ... be deprived of life, liberty, or property, without due process of law."

33.     Further putting to rest any contention that ASMFC is not subject to constitutional challenge as to its actions, Plaintiffs invoke 42 U.S.C. 1983 as referenced in ¶ 23 above.

## I.  No Scientific or Rational Basis to Support the 2024 Striped Bass Addendum

34.     According to its documents, the basis for ASMFC's reduction in the 2024 fishing ratios was that "In 2022, total Atlantic striped bass removals commercial and recreational, including harvest, commercial discards and recreational release mortality) were estimated at 6.8 million fish, which is a 32% increase from 2021 total removals." *Atlantic Striped Bass*, Atlantic States Marine Fisheries Commission: https://www.asmfc.org/species/atlantic-striped-bass (2024).

35.     At the same time, however, the same ASMFC report states that the Chesapeake Bay Striped Bass removals are steadily underlining declining.

Chesapeake Bay removals in numbers of fish for 2017 and 2020-22. (*Id*.)

| Year | Commercial Removals | % Change from 2017 | Recreational Removals | % Change from 2017 | Total Removals | % Change from 2017 |
|------|---------------------|--------------------|-----------------------|--------------------|----------------|--------------------|
| 2017 | 479,547 | - | 2,014,068 | - | 2,493,615 | - |
| 2020 | 526,667 | +10% | 1,503,357 | -25% | 2,030,024 | -19% |

| 2021 | 596,314 | +24% | 1,051,766 | -48% | 1,648,080 | -34% |
| 2022 | 551,520 | +15% | 1,022,212 | -49% | 1,573,732 | -37% |

36.     As is evident, insofar as the Chesapeake Bay area is concerned, ASMFC's own numbers show the number of Striped Bass taken out of the waters are not just declining but are now 37 percent below the comparable figure from 2017.   Nevertheless, the 2024 Striped Bass Addendum will have its most adverse impact in the very area performing the best in terms of Striped Bass conservation.

37.     In addition to ignoring its own numbers, ASMFC chose to disregard consistent industry-produced research which was included in the administrative record by way of the December 19, 2023 Comment Letter submitted by Plaintiff MCBA.  The industry methodology utilizes the same electronic reporting system as does the ASMFC (FACTS[1]) but does so on a first-hand and more specific basis.

38.     These results fully confirm that Striped Bass extraction from the Chesapeake Bay is not only continuing to decline but remains well below pre-COVID levels:

| Year | Charter Boat "for hire" Removals | % Change from 2021 |
| --- | --- | --- |
| 2021 | 121,771 | |
| 2022 | 116,581 | -.9% |
| 2023 | 101,043 | -17% |

39.     Under federal law, conservation of fishing policy by commissions such as ASMFC must be based "on the best scientific information available" (16 U.S.C. § 5104 (a)(2)(A); (16

---

[1] The Fishing Activity & Catch Tracking System (FACTS™) is an online harvest reporting system developed and administered by the Maryland Department of Natural Resources for the use of Maryland commercial watermen.

U.S.C. § 1801(c)(e)).  This has clearly not been the case with respect to the 2024 Striped Bass Addendum at the core of this case.

40.     ASMFC's own documents reported that during the last conducted measuring year (2021), Striped Bass stock was "no longer experiencing overfishing."  species - Atlantic States Marine Fisheries Commission (asmfc.org) (p.1.)

41.     Likewise, from its own documents published less than 60 days ago, ASFMC reported that "striped bass Atlantic Ocean habitats" are <u>not</u> a Fish Habitat of Concern. https://asmfc.org/files/Habitat/FHOC_Designations_January2024.pdf (p. 9).

42.     In the face of all this positive data, ASMFC nevertheless set forth, as the purported "best scientific information available" for the new limitations at issue here, the following:

> These estimates of *preliminary* 2022 removals and updated stock *projections* were presented to the Board in May 2023… Since striped bass catch and F [mortality] rates *vary* from year-to-year (even under the same regulations), the average F from 2019-2022 (excluding 2020 due to *uncertainty* associated with COVID-19 impacts) was applied to 2023-2029 in the *new projections*. Under this F rate, the *new projections estimate* the *probability* of rebuilding SSB to its target by *2029* drops from 97% to 15% (Striped Bass Addendum II, *Id*. at 2) (Emphases added.)

43.     In short, these new requirements threatening the livelihood of hundreds of fishing businesses, thousands of their employees and other working-class jobs in small towns and other communities throughout the Eastern Shore are premised on verbiage such as: "preliminary," "new projections," "estimate," "mortality rates [which] vary from year-to-year," "uncertainty", and "probability."

44.     This narrative mishmash lacks any objective or reasonably measured criteria let alone the "best scientific information," as required by law. 16 U.S.C. § 5104 (a)(2)(A).

45      It is also instructive to note that ASMFC further admits that "these projections are not the same as a full stock assessment update where the model would be re-run to include the 2022 catch-at-age and index data." (Striped Bass Addendum II, *Id*. at 2).

46.      All of this, again employing such amorphous terminology as "partial," "preliminary," "variable," "uncertain, and "possible" is then strung together for a <u>future</u> "projection" that <u>might or might not happen in 2029</u>.

47.      Lastly on this point, even if the Addendum's research were accurate, which it is not, ASMFC's has in no manner substantiated the threshold proposition that any identifiable Striped Bass problem can be attributed to the Chesapeake Bay fishing activities of the actual Plaintiffs in this case who bear the brunt of its impact.

## II.  ACSFC Violated Its Own Rules in Adopting the 2024 Striped Bass Addendum

48.      ASFMC's voting bylaws provide that "No recommendation shall be made by the Commission in regard to any species of fish except by the affirmative vote of a majority of the *compacting states* which have an interest in such species." Art. VI (Emphasis added.)

49.      As noted *supra,* the ASMFC vote on the 2024 Striped Bass Addendum was 14-2.

50.      As part of this vote, the states of Florida, Georgia and South Carolina did not participate as a consequence of not having the requisite interest; Maryland and New Jersey voted "no."   How then did the affirmative votes of only ten "compacting" states reach 14?

51.      The answer is that the District of Columbia, Potomac River Fisheries Commission (PRFC), USFWS, and NOAA voted on the measure even though none of these entities are "compacting states" as specified in the applicable ASMFC voting rules let alone the two Acts of Congress ratifying or amending the Atlantic seaboard interstate fisheries compact.  Pub. Law 77-539 (May 4, 1942); Pub. Law 81-721 (Aug. 19, 1950).

52.     This violation of the ASMFC voting bylaws is not just some form of harmless error that can be cured by subtracting four from 14 and still reaching an affirmative result.  The multiplicity of ineligible participants in both the vote and discussion prior thereto represents prejudicial conduct and, at a minimum, requires the public notice, comment period and arising ASMFC deliberation and voting to be restarted.

53.     During this period, elementary fairness requires that the 2024 Striped Bass Addendum be stayed.

### III.  Economic Impact Analysis Does Not Support the 2024 Striped Bass Addendum

54.     The Magnuson-Stevens Fishery Conservation and Management Act of 1976 ("MSA") governs the management of marine fisheries in U.S. waters. 16 U.S.C. 38 §§ 1801 *et seq*. 2014.

55.     In addition to its conservation goals, the MSA's Congressional findings state that "Commercial and recreational fishing constitutes a major source of employment and contributes significantly to the economy of the Nation." 16 U.S.C. § 1801(a)(3).

56.     Courts interpreting this legislation regularly refer to the MSA as setting forth the "twin goals of conserving our nation's aquatic resources and *allowing U.S. fisheries to thrive*." *Oceana, Inc. v. Pritzker*, 26 F. Supp. 3d 33, 36 (D.D.C. 2014). (Emphasis added.)

57.     When operating under this all-inclusive fishery statute, no federal or state administrative agency and, by definition, no interstate compact of the foregoing is allowed to pursue one of these goals to the exclusion of the other.

58.     This balancing requirement pertains equally and specifically in this instance under the Atlantic Striped Bass Conservation Act of 1984 which declares the following: "Atlantic striped

bass are of historic commercial and recreational importance *and economic benefit* to the Atlantic coastal States and to the Nation." 16 U.S.C. § 1551(a)(1). (Emphasis added.)

59.     Again, leaving no room for doubt that economic impact must pertain, federal law applicable to ASMFC under the MSA, *inter alia*, specifically provides that:

> a fishery impact statement for the plan or amendment (in the case of a plan or amendment thereto submitted to or prepared by the Secretary after October 1, 1990) which shall assess, specify, and analyze the likely effects, if any, including the cumulative conservation, economic, and social impacts, of the conservation and management measures on, and possible mitigation measures for— *participants in the fisheries and fishing communities affected by the plan or amendment* > 16 USC § 1853(a)(9)(A). (Emphasis added).

60.     In *pro forma* response to this requirement the ASMFC's public comment document makes this dismissive comment as to Plaintiffs' livelihoods:

> A reduction in effort could translate into a short-term negative impact on the regional economy and businesses associated with the fishing industry for this species. Importantly, this is likely only a short-term response, and stock dynamics will dictate any longer-term effects on the resource and the angling community...   For the commercial sector, changes in quota could also have economic impacts due to a change in total poundage. A reduction in quota would likely reduce profits and may increase the consumer price of striped bass. Striped Bass Addendum II. (*Id.* at 6).

61.     At the December 6, 2023 Public Hearing on Atlantic Striped Bass Draft Addendum II held in Annapolis, MD, Plaintiffs and numerous other adversely affected parties avowed in person and in writing that the negative economic impact would be immediate, substantial and far from "short -term" as to their particular businesses.

62.     The administrative record in this case includes the explicit and expert comments of Maryland's, ASMFC designee, Michael Luisi, a Natural Resource Biologist and Assistant Director and Fisheries Manager within the Maryland Department of Natural Resources (DNR), warning the Commission that limiting Maryland's charter boat clients' catch to one fish a day "will put people

out of business." *Bay Journal* "Striped Bass Harvest Restrictions Trigger Widespread impact," Feb. 26, 2024 updated Mar. 1, 2024.

63.     Notwithstanding the pointed and timely submission of these public comments, there is nothing in the administrative record, including the below-referenced 1,000-pages of current documentation [2] indicating that ASMFC gave any serious consideration to the economic implications (i.e., "real-world" consequences) of its action insofar as the Chesapeake Bay economy is concerned.

64.     By way of example, for the Chesapeake Bay purposes, the Addendum divides the limitations as between commercial and recreational participants but fails to appreciate or understand the role and significance of the in-between third category consisting of "for-hire" commercial charter boats utilized by recreational fishers.   Plaintiff MCBA made it clear in its December 19, 2023 comment letter to ASMFC regarding Addendum II that most of its customer base "would not book trips" if the permissible catch is reduced to one per person. *See* Declaration of Brian Hardman (Exhibit D).  *See also* Declaration of Robert Bramble, Jr. (Exhibit E).

65.     In a process such as this, governmental agencies must show that they have taken under view the relevant concerns of affected entities and considered regulatory alternatives that would similarly serve the agency's goals via a "less restrictive, yet easily administered" option. *Wilderness Watch, Inc. v. U.S. Fish & Wildlife Serv*., 629 F.3d 1024, 1039 (9th Cir. 2010).

66.     As advanced by Plaintiffs, retaining the current two fish limitation is a modest proposal with negligible impact to the overall plan but a matter of enormous financial impact to the Plaintiff.

---

[2] 2022 Atlantic Striped Bass Stock Assessment Update Report Appendices (Nov. 2022); 2022 Atlantic Striped Bass Stock Assessment Update Report; including May 2023 Supplemental Report (Nov. 2022); and, the Atlantic Striped Bass Stock Assessment Overview (Nov. 2022).

67.     It is, moreover, easily enforceable through the onboarded FACTS[TM] tracking system.

68.     Failure to take this alternative approach under consideration represents arbitrary, capricious and illegal action on the part of ASMFC.

69.     By way of further example with respect to the Chesapeake Bay commercial fishing limitations, the Addendum, as finalized, fails to take into consideration that the 7 percent reduction adopted for 2024 is cumulative to prior reductions such as the 14 percent reduction in in 2013.

70.     In addition and has consistently been argued for many years before ASMFC, its commercial quotas are inherently flawed because they do not distinguish between coastal and Chesapeake Bay commercial fishing interest as these are two very distinct ecosystems.[3]

71.     In this regard the ASMFC commercial harvest reductions unfairly impact Chesapeake Bay commercial fishermen where the stock exists year-round as well as migratory.

72.     Failure to take into consideration and tailor these distinctions between Chesapeake Bay Striped Bass stock and the coast-wide stock into the Addendum represents arbitrary, capricious and illegal action on the part of ASMFC.

**IV. Infringement of U. S. Constitutional Rights**

73.     It is well established under constitutional principles that a 5th Amendment taking may be the actual seizure of property by the government, or in the form of a "regulatory taking," which occurs when the government restricts a person's use of their property to the point of it constituting its seizure. *David H. Lucas, v. South Carolina Coastal Council*, 505 U.S. 1003 (1992).

74.     That is precisely the situation in this case.

---

[3] *See, e.g.*, Maryland DNR Response to 2014 Chesapeake Bay Striped Bass: "Because the Chesapeake Bay is a producer area, the fisheries working within the Bay have access to striped bass that are of a smaller size than the large migrant fish that range along the coast."

75.    "There is no dispute that the 'takings' clause applies equally to personal property as well as realty." *Horne v. Dep't of Agriculture*, 576 U.S. 351 (2015).

76.    That is precisely the situation in this case as to the vessels and other business property of the individual Plaintiffs and the organizational Plaintiffs' members.

77.    The Supreme Court has also specifically held that the ability of individuals to practice their chosen profession cannot be revoked by government action without due process *Greene v. McElroy*, 60 U.S. 474 (1959).

78.    That is also precisely the situation in this case.

79.    Beyond the named Plaintiffs in this case, there will and already has been materially negative impact on the local communities adjoining the Chesapeake Bay as a consequence of ASMFC's adoption of the 2024 Striped Bass Addendum. (Exhibit F).

80.    A cost-benefit analysis has long been the dominant method of systematic analysis for evaluating government policymaking decisions which may sometimes appear to come into conflict, but there is no record of this Due Process obligation having been undertaken by ASMFC with respect to the Addendum.

81.    "A regulation is arbitrary and capricious if the agency 'failed to consider an important aspect of the problem.'" That "includes, of course, considering the costs and benefits associated with the regulation." And as part of that cost-benefit analysis, the agency must identify benefits that "bear a rational relationship to the . . . costs imposed," *Chamber of Commerce of the USA, et al. v. SEC*, Docket No. 23-60255 (5th Cir., Oct. 31, 2023).

82.    There is a substantial public interest where, as here, governmental agencies have failed to abide by the federal laws that govern their existence and operations." *Texas v. United States*, 40 F.4th 205, 229 (5th Cir. 2022).

### V. Infringement of Maryland Constitutional Rights

83.    The Constitution of the State of Maryland provides that any injury done to "person or property, ought to have remedy by the course of the Law of the land, and ought to have justice and right, freely without sale, fully without any denial, and speedily without delay, according to the Law of the land."  Article 19.

84.    As already noted, the U.S. Constitution also prohibits any State (or compact of States) from depriving any person of any rights, privileges, or immunities secured by the Constitution and laws of the United States.  5th and 14th Amendments.

85.    Any suggestion that ASMFC exists as some exception to constitutional protections and can thus also override the express position of the State of Maryland without providing due process of law is without merit.

86.    Neither the Fourth Circuit nor the Supreme Court has adopted the position that the APA does not apply to Interstate Compacts. *Potomac Constr. Co. v. Wash. Metro. Area Transit Auth.*, Civil Case No.: GLS-21-193 (D. Md. Apr. 16, 2021).

87.    For these reasons, the above-described abridgement of the Plaintiffs' rights and privileges must be overturned and the ASMFC process reinstituted in a manner that incorporates cost-benefit analysis requirements and advances no fishery quota changes or other limitations except in the least burdensome fashion.

### **First Count**

### (U.S. Constitution – 5th and 14th Amendments)

88.    Plaintiffs repeat, reallege, and re-emphasize the allegations set forth in Paragraphs 1 through 87 as if set forth herein full, and as the basis for this claim.

89.    Defendant and its compacting States consisting of Connecticut, Delaware, Maine,

Massachusetts, New Hampshire, New York, North Carolina, Pennsylvania, Rhode Island, Virginia, plus the District of Columbia have caused Plaintiffs to be deprived of their rights to property and livelihood secured and guaranteed under the Fifth and Fourteenth Amendments of the United States Constitution without Due Process of Law.

90.     Defendant palpably abused its governmental authority through actions which were in all regards arbitrary, capricious, unreasonable, overly broad and otherwise wrongful in violation of the U.S. Constitution and other applicable federal law.

91.     The interests of Plaintiffs have been adversely affected and manifest injustice has resulted from Defendant's arbitrary, capricious, and unconstitutional actions.

## Second Count

(Civil Rights Act of 1871 - 42 U.S.C. § 1983

92.     Plaintiffs repeat, reallege, and re-emphasize the allegations set forth in Paragraphs 1 through 91 as if set forth herein full, and as the basis for this claim.

93.     Defendant and its compacting States consisting of Connecticut, Delaware, Maine, Massachusetts, New Hampshire, New York, North Carolina, Pennsylvania, Rhode Island, Virginia, plus the non-qualified District of Columbia were at all times and in all events relevant hereto, acting under the color of state law.

94.     The actions of Defendant, in violation of 42 U.S.C. § 1983, were performed under the color of authority of state law and have caused Plaintiffs to be deprived of their rights to property and livelihood secured and guaranteed under the Fifth and Fourteenth Amendments of the United States Constitution without Due Process of Law.

95.     Defendant palpably abused its governmental authority through actions were in all regards arbitrary, capricious, unreasonable, overly broad and otherwise wrongful in violation of

Plaintiffs' federal and state constitutional rights.

96.     The interests of Plaintiffs have been adversely affected and manifest injustice has resulted from Defendant's arbitrary, capricious, and unconstitutional actions.

### Third Count

(Maryland Constitution – Article 19)

97.     Plaintiffs repeat, reallege, and re-emphasize the allegations set forth in Paragraphs 1 through 96 as if set forth herein full, and as the basis for this claim.

98.     Defendant, acting by and through the States of Connecticut, Delaware, Maine, Massachusetts, New Hampshire, New York, North Carolina, Pennsylvania, Rhode Island, Virginia, and the District of Columbia have caused Plaintiffs to be deprived of their rights to property and livelihood secured and guaranteed by Article 19 of the Constitution of the State of Maryland.

99.     Defendant palpably abused its governmental authority through actions were in all regards arbitrary, capricious, unreasonable, overly broad and otherwise wrongful in violation of state constitutional rights, other state laws and common laws.

100.    The interests of the individual Plaintiffs and the organizational Plaintiffs' members have been adversely affected and manifest injustice has resulted from Defendant's arbitrary, capricious, and unconstitutional actions.

### REQUESTED RELIEF

WHEREFORE, Plaintiffs respectfully request an order and judgment in their favor and against the Defendant comprising the following:

1.      An order and judgment holding unlawful, enjoining, and setting aside the ASMFC 2024 Striped Bass Addendum approved on January 24, 2024, as unconstitutional or illegal on other impermissible grounds;

(a) or, in the alternative, an order and judgment holding unlawful, enjoining, and setting aside the ASMFC 2024 Striped Bass Addendum approved on January 24, 2024, as it pertains to recreational fishing in the Chesapeake Bay;

(b) or, at a minimum, an order and judgment holding unlawful, enjoining, and setting aside the ASMFC 2024 Striped Bass Addendum approved on January 24, 2024, as it pertains to the 1-fish bag limitation as applicable to the Plaintiffs' "for hire" charter boats operating in the Chesapeake Bay;

(c) or, in the alternative, an order and judgment holding unlawful, enjoining, and setting aside the ASMFC 2024 Striped Bass Addendum approved on January 24, 2024, as it pertains to commercial fishing in the Chesapeake Bay;

(d) or, at a minimum, an order and judgment holding unlawful, enjoining, and setting aside the ASMFC 2024 Striped Bass Addendum approved on January 24, 2024, as it pertains to the 7 percent reduction applicable to commercial fishing boats operating in the Chesapeake Bay;

2.      Costs and attorneys' fees pursuant to any applicable statute or authority; and

3.      Any other relief that the Court deems just and appropriate.

Respectfully submitted,

*/s/ Andrew C. Meehan*
Andrew C. Meehan
Bar No. 26615

MacLeod Law Group, LLC
110 North Cross Street
Chestertown, Maryland 21620
Tel: (410) 810-1381
ameehan@mlg-lawyers.com

*/s/ James J. Butera*
James J. Butera
MEEKS, BUTERA & ISRAEL PLLC
2020 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: (202) 285-3382
jbutera@meeksbi.com
(Admission *pro hac vice* pending)

Attorneys for Plaintiffs